Mr. Dixit May it please the court, counsel, good morning your honor. Your honor, we're here seeking reversal of the trial court's order on summary judgment after a motion for reconsideration. The overarching issues here, your honor, are inventorship, invalidity, and ultimately depending on how the court rules, infringement. Inventorship... How can infringement be for us when she denied summary judgment on the infringement? Infringement would be for wink, your honor, if the court were to decide... No, no, but you can't appeal the denial of summary judgment. It's not possible. I'm sorry, your honor? You're trying to appeal the denial of summary judgment on your infringement theory. You can't appeal the denial of summary judgment. It depends on how this court rules on inventorship. If the court were to find that Johnson is not an inventor, that the district court was wrong... No, you're not understanding. You cannot appeal a denial of summary judgment. It's not an appealable order. I understand what you're saying, your honor. What I meant to say, your honor, was that the overarching principle here, the anchor issue, is inventorship. We filed cross motions or cross motions for summary judgment filed in the trial court. Subsumed in those cross motions for summary judgment were issues relating to the design patent and the utility patents. The trial court determined that Johnson was an inventor. When that trial court did that, she pivoted the entire case into establishing the inventorship of the utility patents and the design patents. She also changed the conception date in determining that Johnson was the inventor. She changed it to January 15th. If we agree with the district court that Johnson was the inventor, what is left in this case for us to decide? If the court agrees Johnson's an inventor, there's still the issue of whether Canadian law governs the contract. There's still that issue after her inventorship where the court took the contract that was signed in Canada and determined under this contract whether, number one, whether it was... You're still talking about inventorship though, right? It's inventorship and then whether she abandoned her patent. That's correct. I'm sorry, I wasn't clear. Assume the whole thing the district court's right on, that she was the inventor and she didn't abandon it. I'm trying to figure out what are the infringement invalidity things you think are left that we have to decide if we think she was right on Johnson was the inventor and retained her right. I would still think, Your Honor, there's clarification needed with regard to whether she was the inventor of the design patent or the utility patents. For example, the design patent, it's nothing more than a combination of a broad type... Yeah, but put aside the inventorship questions. What's left? The answer is there's nothing left with respect to the design patent, but as to the two utility patents, there's still this determination of invalidity based on anticipation, right? Correct. Which Claire still has an interest in because she is under the district court's decision one of the inventors. Yes, Your Honor. That anticipation date is critical with regard... I hate to bring it back to inventorship again, but the court acknowledged Claire as a co-inventor but chose the date of conception as January 15th. That's just four days after the prior art cited that anticipates the invention. So that question of fact would remain. We would still have to go back to the trial court for a jury to determine that four days and the judge changed... I don't understand what you're saying. Okay. When the judge determined Johnson was an inventor, she then went to go to determine whether invalidity, this argument of invalidity, and whether the notorious contour bar... Over the contour bar, yes. Right. Anticipated. The judge said she accepted Johnson as the inventor. She accepted Ertl's affidavit saying that they made the bra on January 11th, 2008. Critically missing from that affidavit was any mention that it was made in the US. There's no evidence that Ertl's affidavit establishing January 11th, 2008 was made in the US. The judge then used that date as the anchor date for anticipation. Then she looked at Johnson's testimony and said she conceived of the invention at earliest January 15th. That can't be correct. That absolutely is a disputed issue of fact. Johnson's own deposition testimony states that the full coverage of the bra was determined in the month of December. If you recall, Claire hired Johnson in May 2007. In October 2007, she actually started working on it. They went back and forth between October and... I'm sorry. I don't understand the relationship between these two January dates. She found that the contour bra was conceived of on January 11th, 2008. What does that have to do, and that has to do with anticipation, what does it have to do with inventorship? She moved the date of invention forward. When she said Claire invented... But this is the invention of the contour bra. This is not the date of the invention of the patented invention here. No, she says January 11th is the date of the invention of the patented invention. And January 11th is for the... Where did she say that? If you're looking at her order, Dock Entry 128, Appendix 14, it says with a priority date of January 11th, 2008 for the contour bra, and a priority date of January 15th, 2008 at the earliest for the invention asserted in the patents at issue. So, the judge moved the date of invention forward based on Johnson's testimony. Claire says, I invented it well before 2008. She said, I came up with the idea in 2004, 2005, hired a bra maker in 2000. Yeah, but it wasn't a complete invention until Johnson made her contribution. That is an issue of fact. Deposition transcripts weren't meant to replace trial room testimony. And Claire should have a chance... It's only an issue of fact if there's an actual genuine issue of material fact in dispute. Yes, ma'am. And there is. I mean, Johnson's testimony... I don't know what there is. I mean, Johnson's testimony is that she added all these things that are part of the claims. What Claire invented didn't even seem to show up in the patent at all. Putting fabric between two parts of the bra. I mean, it's a completely different patent. Okay, so then there's the design patent and the utility patents. In the design patent, there's no mention of anything. It says a combination of a bra and tank top, which Claire absolutely invented and conceived. No, no, that's not true. Because what Claire invented and conceived was putting the fabric between the two cups. And the design patent shows the fabric going all the way across. That's what a tank top would do. The argument that the trial court accepted, which I disagree with, Your Honor, is somehow we all agree Claire said a tank top over a bra. Clearly a tank top would cover the entire bra. Then, because of Johnson's testimony, the trial court reduced her tank top to an insert. That's a question of fact. Who did that? That was done as a matter of law and that's not correct. That's a question of fact. Claire said from day one, I want something like a tank top over a bra. Clearly the tank top covers the entire bra, covers the cup. No, I don't think it's clear at all. My understanding of what the district court said was that what Claire said was put the fabric between the two cups in the shape of a V, whereas the design patent shows the fabric going all the way across. And we have a drawing by Johnson showing that goes all the way across and that that was one of her contributions. That insert, personally, Your Honor, was made by a different bra manufacturer than Johnson. Claire first took the tank top and bra idea to a prior bra maker who came up with that insert. She was not satisfied. Where in the record does it show that Claire invented the notion of having the fabric go all the way across? Show me. I can tell you just in Johnson's deposition testimony. In Johnson's deposition. Where? Appendix 895. Again, that January 15th date was argued a lot. In the deposition testimony, appendix 895, page 61 of Johnson's deposition, if you recall, I said that they started actually working on the design, version 1, version 2, version 3. Page 61, line 14. You'll see the full version by then somewhere between December 15th and January 15th. I had made the decision that I didn't like how it was going to go to production. Somewhere over the Christmas holidays, I would have created the full cami with the fabric going to the side. I'm sorry. How does that support your contention that Claire created this? This is Johnson's deposition that she's the one that went to the full cami on the side. Claire's affidavit and Tom Koskinas' affidavit state she came up with this idea. Why aren't you citing us to those? What do they say? We transitioned from January 15th back to inventorship, Your Honor. I just want to clarify. I think we're trying to ask you where there's a genuine issue that Claire created the tank top all the way over rather than the insert. Not about dates. The fact that the tank top goes over the entire bra conceives the concept of material going over the entire bra, over the cups, I should say. Right. So where is your evidence that Claire came up with that idea instead of Johnson? Her affidavits and her deposition testimony. Where? I will find that for you. There it goes. Appendix 497. 498. 498? Well, it's her entire declaration that goes through it. No, no, no. I want to see where she says that she invented the thing going all the way across as opposed to Johnson's doing it. Okay. Between paragraphs 8 and paragraphs 12, she states that appendix 500 through 501. Where's the exact language? Which paragraph? I asked Ms. Johnson if she would help me create an updated prototype. Which paragraph is this in? I'm starting from paragraph 9. Yeah, okay. Actually, paragraph 12. Under our agreement, Ms. Johnson provided at least two updated prototypes of Kami-Brock patterns for the Kami-Brock, and she provided under my direction the figures for the design patent applications which resulted in the U.S. PAC number D622478. That's your evidence that Claire invented the fabric going all the way across? Well, it's in the entirety of her testimony, Your Honor. No, no. That doesn't cut it. Don't come in here and tell us about the entirety of the testimony, as though we have to, somebody said, like pigs hunting for truffles in the forest. Where is it? I mean, even this affidavit isn't consistent with what you're saying. On paragraph 7, which you didn't direct it to, it says, I took a black bra and asked if you could sew black fabric across the front to create a Kami-Brock. I mean, that suggests exactly what everybody, or at least the district court, thought she did admit, which was putting fabric between the bra. There was no testimony, none of her testimony relates to limiting, cutting a tank top to just the V insert. I thought you said that's what the prior person made. And this is the prior person, isn't it? And it says, I showed him how I wanted it to look, and under my direction he made it for me. And she wasn't done. Yes, but that's what she said. But this doesn't say anything about what she told her to do. The testimony from Ms. Johnson is that she's the one that came up with the idea. No, the testimony, Your Honor, I would assert, is that Ms. Johnson was answering to Claire, who hired a contractor. If I hire a contractor, the contractor doesn't tell me when I'm done. Something in the record where Claire says, I told Ms. Johnson to put the fabric across the entire bra. I believe her declaration says that, Your Honor. And I believe that her instructions and her deposition testimony to Johnson, saying that I want a tank top over the bra, covers the material overlay. If you go to the claims of the patent, the design patent says a combination Where did she say exactly that when you just mentioned her? She told her I wanted a tank top over a bra. Can you point in the record where those exact words are? The tank top over the bra? Yes. It's in the patent itself. And in her deposition testimony, I'm way… No, you've got to answer the question. Okay. Why don't you see if you can come up with… We'll give you two minutes for rebuttal. Thank you. Mr. Santuri. May it please the Court. What we have is a relatively straightforward case. It really turns on testimony directly from the named inventor, and that's where I'm going to start. I'm going to start at Appendix 834 of the record. There is testimony from Ms. Clare, one of the named inventors. Is there some aha moment that you had when you came up with the design shown in Exhibit 1, which was the 478 design patent? With that exact design, she asked, Yes, ma'am. When I was working with a bra maker, Okay, who is that? Her name is Beverly Johnson. So we're not talking about some vague idea of covering cleavage with fabric or with a bra. When asked specifically about the design that's in the patents in suit, Ms. Clare was unequivocal. It wasn't conceived until she was working with the bra maker. A few pages later in her testimony on Page 848 of the appendix, I asked about specific aspects that Ms. Johnson contributed. Did you develop a unique turn-under sewing technique? I did not. Did you come up with the idea to use a turn-under sewing technique for your cami bra? No. Do you know what a turn-under sewing technique is? No. Do you know who came up with the turn-under sewing technique in this patent? That would have been the bra maker. Later in her deposition, Page 856, Did Ms. Johnson suggest to you that the material covering needed to be molded? Yes. Why did the material need to be molded? I don't mold it. I don't recall. Do you know how fabric is molded? No. Do you know what it means to be bubble molded? I don't know. I haven't seen it. The deposition testimony was very clear. When it comes to the details of the patent to the claimed inventions, Ms. Clare was straightforward and honest. Ms. Johnson contributed various aspects of it. The appellant has conceded that these aspects of the design go throughout the claims. What's your bottom line on the invalidity question of both the utility patent and the design patent? Your Honor, I'm not sure that the court would have standing any longer to continue that inquiry. I think that once Ms. Johnson became, once she received an interest by virtue of the inventorship question, both sides reached out and asked her to assign her rights. She assigned those rights to Chico's, and so now the owners of the patent are Ms. Clare and Chico's, and I don't believe that there could be a dispute between these two parties as to invalidity because I don't believe current owners can pursue a court action as to invalidity. Well, what are we supposed to do about the invalidity? There's no finding of invalidity as to the design patent, right? That's correct, Your Honor. There's anticipation findings with respect to the two utility patents. Correct, Your Honor. What are we supposed to do about that? I think that with respect to those rulings, they're just affirmed because there's no further that this court can go, or they're vacated, or the invalidity findings are vacated as a result of the loss of standing. Which? How can we affirm them if there's no standing for you two to dispute them? You're probably right, Your Honor. They probably have to be vacated now that the only parties to the suit are both owners. A patent owner can't challenge his own patent? I don't know how there would be a case of controversy for the patent owner to challenge his own patent within an Article III court, Your Honor. Well, what happens if a reputable, say, pharmaceutical manufacturer gets a patent and then learns later, to their great horror, that the people that prosecuted the patent in the patent office engaged in inequitable conduct, lied to the patent office, take up a refined company, and they say, that patent has to be unenforceable. And so they seek to have the patent declared unenforceable for inequitable conduct. I'm not sure that, I don't believe there would be standing to do so. Well, then why did you raise the issue? That's your cross appeal. No, Your Honor. Our cross appeal is to unenforceability, and only if the court reverses the judge as to inventorship. Yes, Your Honor. And if its patent is unenforceable, it's just as good as it being invalid. That's true, Your Honor. But, as you know, under the case law, if the inequitable conduct was engaged in by, say, for example, Claire, the inequitable conduct ruling stains the innocent co-inventor as well. That's probably true, but that's why our cross appeal is couched as if there's questions to inventorship. This court could reverse the judge and find that Johnson isn't an inventor. But it's not really even a conditional cross appeal. It doesn't say you can only reach. It says we don't need to reach it. Permission. I see where the court's going. Yes, Your Honor, I don't believe the court can reach it if the inventorship rulings and the ruling on the motion to dismiss from the lower court is affirmed. There is no—I don't believe there's any—I don't believe the court can address the invalidity findings, and I don't believe the court can deal with inequitable conduct. And I think that then— But the question is, should we vacate the invalidity findings? I think that the court—I believe that the court made these findings at the same time. Arguably, there was a case of controversy at the time that the court made this bulk of findings, both inventorship and invalidity. But I think now the parties can no longer contest those issues, and I believe that they can be—that they just are simply vacated. Obviously, the parties can't move forward. I don't believe the parties would be able to move forward on these issues in the future because they have knowledge that the patents are invalid based on the findings of this lower court. But I don't believe that necessitates a finding of invalidity by this court. I think that my obligations under Rule 11 would prevent me from continuing to assert that patent, knowing of the invalidity based on the evidence in this case. And proceed with the 256 hearing on inventorship? Your Honor, I don't—I suppose the court could do so, but I'm not sure it's—  Right. And according to your briefs, it looks like you think that Johnson's the sole inventor. Well, I believe the lower court finding was that Johnson and Clare are both inventors, and Koskinas were not. And I believe that if this court affirms that finding, then yes, the 256 hearing, I suppose, could undergo just for the formalities of correcting inventorship on the face of the patent. But other than that, I don't believe there would be— You could challenge that if you wanted to. Oh, challenge the finding? The joint inventorship. I'm not sure— Your brief is replete with statements that led me to believe that you thought that Clare wasn't an inventor at all. Yes, Your Honor, I don't believe that she's an inventor at all. However, I think that the lower court found otherwise, and we haven't appealed that ruling that she's an inventor. So I think we're stuck with that finding, and I think we'd be a stop from making an argument in a subsequent hearing that the court erred with that finding, having not taken it up on appeal in this particular case. Your Honor, other than— The court has dismissed your declaratory judgment complaint, correct? Yes, Your Honor. With prejudice? Yes, I believe so, Your Honor. Because of the—once Chico's received both the assignment and— Well, that's because, I mean, after the inventorship issue was resolved, the judge said, well, what do you want me to do now, right? We knew that the infringement counterclaim was out the window. Correct, Your Honor. And she said, well, what do you want me to do with your D.J. complaint? Correct. And you said, we don't think there's a case or controversy, so you should dismiss it. Correct, Your Honor. Under Ethicon v. U.S. Surgical. It was basically the same fact pattern where once there was a determination of an additional inventor, that inventor provided, I believe in that case, an exclusive license and covenant not to sue. Here we have an assignment and a covenant not to sue and a release. And you thought that dismissal was with prejudice? I can't remember. Yes, Your Honor, I believe so. You didn't give us in your appendix to the blue brief the district court's most recent order. Your Honor, mine's not the blue brief. I mean, the blue brief didn't give—well, you in the red brief didn't give it to us either. I apologize, Your Honor. The most recent ruling on— She added another order in December. On Appendix 33, I had Appendix 33, the motion to dismiss with prejudice was granted. I'm looking at Document 140. Is that correct? Document 138 is where she dismissed with prejudice. 139 was her response to the court's request for position. And then 140, she goes count one and count two, seeking a BJA that are dismissed. Is 140 included in the appendix? No. No. But that's the most recent order I'm talking about. That's correct. December 3rd, yeah. I think— What you said was dismissal was appropriate. You didn't say whether it was with or without prejudice. She says dismissed, period. I'm sorry, which order, Your Honor? December 3rd. December 3rd. On December 1st, she dismissed with prejudice. Yeah, but she keeps entering words. There's another order. There's another order on December 3rd, which isn't in the appendix. I believe that one was dismissed with prejudice, Your Honor. It doesn't say so. I'm looking at it. I went and dug it up because you didn't have it in the record. If you're looking in the appendix for it, you're not going to find it because it's not there. It's not in there. I'm reading to you. Okay, I understand, Your Honor. She says now Chico responds it believes these claims should be dismissed as they're no longer a live case of controversy that qualifies for the DJ Act. Court agrees and finds claims for non-infringement and invalidity must be dismissed. Accordingly, plaintiff Chico's Count 1 and Count 2, Document 61, seeking DJs of non-infringement and invalidity are respectfully dismissed. Period. Well, consistent with that, Your Honor, I believe that, well, she's already dismissed with prejudice based on in 138, and a follow-on to that was at 140 where she dismissed the claims with respect to infringement and invalidity. She followed the same logic. I would view that as dismiss with prejudice. However, she doesn't explicitly state that in her order. What about Cardinal Chemical, which seems to say that where there's a finding of no infringement, you can still go on. In fact, you still have to go on and decide the invalidity question. Even why? I'm not sure that I'm... Well, never mind. Never mind. If the court doesn't have any further questions for me, I will cede the rest of my time. Okay, thank you, Mr. Santuri. Mr. Dixit, we'll give you two minutes. I apologize for not having this ready, Your Honor, the first time. So I would direct the court's attention to Appendix 839-840, where Claire generally speaks about the conception, and specifically with regard to Appendix 840, page 82, her deposition. Mr. Santuri asks the question, Presumably you've worn tank tops over bras long before then, right? Answer, yes. Were you trying to? Did you try to modify, strike that in 2005? Did you try to create a garment in combination with a tank top and bra? I agree it's vague. She goes on to clarify, Yes, but I want it to be short, not long, like a tank top. So it wasn't just attached, but it was pinned up. That was the point. She goes on to further explain that she would cut the tank top and pin it underneath the bra so that she would get the coverage over the bra that she was seeking. When she went to bra makers is when the bra makers started converting her tank top over a bra to a panel. She was obviously not satisfied with the panel and went to Johnson and continued working with Johnson through almost most of 2007 and beginning of 2008 until Johnson created ultimately the design that Claire wanted, which was pulling the fabric up over the cleavage to get the coverage she needed. Plus the manufacturing. Remember, Claire wanted several sizes of her bra. She wanted to create her own line and do manufacturing. Johnson did nothing more than take prior art, apply it to Claire's idea, and reduce it to practice. But there is no doubt Claire's idea of the tank top over the bra, which she pinned under, is the conceived invention. And that's what's in the design patent. That's what the design patent says. A combination of a brassiere and tank top. Then the utility patents come. Where does she say she pinned it under? If you go up to page 83, same Appendix 840, what do you mean, pin it up, pin what up? Pin the fabric of the tank top up so it was short, not long. That doesn't say she pinned it under. It goes on and says, I would have pinned it somewhere. On the shoulder straps, I don't recall. She doesn't even remember where she pinned it. Well, I guess it's fair to assume she means under the bra. She wouldn't pin it to a shirt. Well, she didn't even know in her deposition where she pinned it. Well, Your Honor, that's a question of fact. Whether the jury believes... How can it be a question of fact when she testifies she didn't know where it pinned it? This is the first deposition she's ever taken in her life. I would believe that Claire needs to be cut some slack with regard to her memory being in under deposition. Depositions were not meant to replace trial courtroom testimony on a witness. You still have to create a genuine issue. If this is it, you don't have it. Is there someplace else where she says, I actually did come up with the idea of pinning it under the bra and over all of it? Because the next paragraph after that goes in and talks about the prototype she created with the other guy who pinned it between me. And what I believe corroborates Claire's testimony is she wasn't done with the other guy. If the insert of the bra was such a great idea, if that was the idea or what she was stuck with, why would she continue hiring people? I mean, that's just a practical question. If the insert was her idea, she would have been done. And she clearly wasn't. Okay, thank you, Mr. Dixon. Thank you. Thank both counsel. The case is submitted.